IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DOUGLASS PATTERSON,**

        **Plaintiff,**

v.                                     Civil Action No. 5:07cv114
                                              (Judge Stamp)

**J. FRANCIS, UNITED STATES OF AMERICA,
K. WHITE, H. LAPPIN, P. LAIRD, A. GONZALEZ,
E. MACE, M. PLASAY, E. BORAM, M. DIB, J. NOLTE,
T. CONRAD, C. CUTTWRIGHT, M. VELTRI, D. RICH,**

        **Defendants.**

**PRELIMINARY REVIEW AND REPORT AND RECOMMENDATION**

On September 7, 2007, the *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to 42 U.S.C. § 1983, Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Federal Tort Claims Act ("FTCA"), and the American with Disabilities Act ("ADA"). On September 11, 2007, the plaintiff was granted permission to proceed as a pauper. Although the plaintiff was assessed the $350 filing fee pursuant to 28 U.S.C. § 1915, he was not required to pay an initial partial filing fee. Accordingly, this case is now before the undersigned for a preliminary review and report and recommendation pursuant to 28 U.S.C.§§ 1915(e) and 1915A and LR PL P 83.01, et seq.

### I.   Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## II. The Complaint

In the complaint, the plaintiff first asserts that on or about September 1, 2006, he sought out and established a rapport with Dr. Michael Plasay, Chief Psychologist at the Gilmer Federal Correctional Institution ("FCI-Gilmer"). The plaintiff asserts that he sought out Dr. Plasay for treatment of his pre-existing medical conditions of Polymyositis and Post Traumatic Stress Disorder ("PTSD"). During a meeting with Dr. Plasay, the plaintiff asked the doctor to review certain correspondence the plaintiff had written to outside legal counsel and to make any comments the doctor deemed appropriate from his professional point of view. Dr. Plasay allegedly read the letter and stated: "Do you know what they are going to do with this?" The plaintiff responded that he "hoped they would understand what [he] is going through." The plaintiff asserts that Dr. Plasay then stood up, took the plaintiff's letter and proceeded to "wipe his derriere" with it while telling the

---

[1] Id. at 327.

plaintiff that this is "what they are going to think of what you are writing about."

Next, the plaintiff asserts that on or about October 1, 2006, the plaintiff suffered a serious forehead injury, torn tendons in his right ankle and a left knee bruise as a result of a fall outside the dining hall at FCI-Gilmer. The plaintiff asserts that as he was exiting the dining hall, his walking cane became entangled in an open grate of a drainage gate causing him to fall and injure himself. The plaintiff asserts that medical personnel were called and proceeded to place the plaintiff in a wheelchair and escort him to the infirmary where he was given an x-ray and bandage for his head injury. The plaintiff was then sent back to his housing unit.

On November 3, 2006, the plaintiff reported to sick-call complaining of dizziness, blurred vision and headaches. During his medical evaluation, the plaintiff was informed that his medical records contained no documentation of any head injury. However, the plaintiff was scheduled to see the Clinical Director, Dr. Mace. At his appointment with Dr. Mace, the plaintiff asserts that the doctor suggested his symptoms were a result of his Polymyositis and not from a fall or accident. The plaintiff requested Dr. Mace order an MRI of his forehead and an arthroscopic evaluation of his right ankle. The plaintiff's requests were denied. Instead, Dr. Mace prescribed a steroid nasal spray.

Third, the plaintiff asserts that on or about October 1, 2006, the plaintiff was placed on FRP status (financial responsibility payments) by his unit team, defendants Veltri and Rich, because of the large amount of restitution owed in his criminal case. Defendant Rich also suggested that the plaintiff apply for employment with Federal Prison Industries (UNICOR). The plaintiff asserts that he applied at UNICOR shortly thereafter, and was hired by the supervisor, Mr. Dixon. The plaintiff discussed his physical limitations with Mr. Dixon and the two allegedly decided that the plaintiff could apply for a job in quality control. Mr. Dixon allegedly told the plaintiff to watch for the call-

3

outs to start work.

The next day, however, the plaintiff was called to the Federal Prison Industries to meet with the manager, defendant Conrad. Defendant Conrad informed the plaintiff that he could not have anyone working on his floor who had physical limitations. Although the two discussed the possibility of the plaintiff working as a clerk, defendant Conrad told the plaintiff that none of the other clerks had physical limitations and that plaintiff could not work for UNICOR with his physical limitations.

As a result, the plaintiff asserts that he has suffered nonspecific injury, and continues to suffer such nonspecific injury, due to the actions of the defendants. Therefore, the plaintiff seeks judgment against the defendants in excess of $50,000, plus costs, interest, attorneys' fees if one should be appointed, and exemplary and punitive damages. The plaintiff asserts that his claims have been exhausted and attaches copies of his administrative remedies and his administrative tort claims.

### III. Analysis

#### A. Claims Under § 1983

Title 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

4

Accordingly, by its terms, § 1983 applies only to state actors and has no application in this case, a case against the federal government and its employees. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) (a claim for relief under § 1983 may be made only against persons who acted under color of *state* law) (emphasis added). Accordingly, the plaintiff's claims under § 1983 will be dismissed with prejudice and the Court will address the plaintiff's claims under the appropriate standard of review. See Bivens, supra ( wherein the Supreme Court created a counterpart to § 1983 so that individuals may bring a suit against a federal actor for violating a right guaranteed by the United States Constitution or federal law); see also 28 U.S.C. § 2671, et seq., (FTCA).

**B.  Federal Tort Claims**

The FTCA waives the federal governments' traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Because all of the alleged negligent acts occurred in West Virginia, the substantive law of West Virginia applies.

Although the plaintiff's complaint and memorandum in support are more than 50 pages long, upon a thorough review of those documents, it is clear that the plaintiff's pleadings are more form than substance. In particular, the undersigned notes that the plaintiff's actual claims are scant on detail, making it hard to discern the basis for the grounds raised. However, based on the record before the Court at this time, the undersigned believes that the plaintiff claim under the FTCA arises solely from his allegation of medical malpractice. Therefore, the undersigned will address the plaintiff's tort claim on that basis alone.

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding.

> Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.2004).[2]

Here, with regard to the appropriate standard of care, the plaintiff has completely failed to sustain his burden of proof. The plaintiff does not assert what medical condition has been misdiagnosed by the defendants, much less, establish the standard of care for the diagnosis or treatment of such a condition.[3] Under the circumstances of this case, the plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant's breach of the duty of care. This he has not done. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, the plaintiff has failed to state a claim for relief under the FTCA and that claim should be dismissed.

## C. **Plaintiffs' Bivens Claims**

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends

---

[2] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

[3] Plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of a broken leg, and copies of plaintiff's medical records are insufficient to establish the standard of care.

7

. . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

Moreover, liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the Plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*,

but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, Plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, Plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id. In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Id.

### 1. Defendants Francis, White, Lappin, Laird and Gonzalez

Although the plaintiff names defendants Francis, White, Lappin, Laird and Gonzalez in the caption of this case, he fails to allege any personal involvement on the part of those defendants in the body of the complaint. Moreover, it appears that the plaintiff names those defendants in their official and supervisory capacities as the Warden, Regional Director, Chief Operating Officer of Prison Industries and former Attorney General of the United States, respectively. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under Bivens is not available against defendants Francis, White, Lappin, Laird and Gonzalez in their official capacities.

Likewise, those defendants cannot be held liable simply because they have supervisory capacity. In order for those defendants to have supervisory liability the plaintiff must show that they tacitly authorized or were indifferent to an alleged violation of his constitutional rights. This he has not done. Moreover, to the extent the plaintiff may be asserting that these defendants violated his constitutional rights by denying his administrative grievances, that claim is also without merit as this

is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Accordingly, Plaintiff cannot maintain his claims against defendants Francis, White, Lappin, Laird and Gonzalez.

### 2. Defendants Boram, Dib, Nolte and Cuttwright

Like the defendants mentioned in the preceding section, although the plaintiff names defendants Boram, Dib, Nolte and Cuttwright in the caption of his case, he fails to allege any personal involvement on the part of those defendants in the body of the complaint. To the extent that the plaintiff would argue that he refers to the defendants collectively throughout his complaint, such generalization is insufficient under Rule 8. Not each defendant named in the caption of his case could have possibly taken part in every alleged unconstitutional act against the defendant. For example, it is unlikely that medical staff (Boram, Dib, Nolte) would have had anything do with the plaintiff's employment in Prison Industries. Likewise, it is unlikely that prison industries staff (Cuttwright) would have had any part in the alleged indifference to the plaintiff's medical needs. Without more sufficient detail, it is simply impossible for defendants Boram, Dib, Nolte and Cuttwright to defend this action.

The undersigned notes, however, that in the plaintiff's administrative remedies, he does mention defendant Boram. Specifically, the plaintiff states that when he reported to medical for a follow-up after his fall, he was told that there was no documentation of the fall in his medical records. The plaintiff asserts that this information was given to him by defendant Boram. It also appears that defendant Boram scheduled the plaintiff's appointment with Dr. Mace. The plaintiff makes no allegations that defendant Boram either failed to treat him, or improperly treated him, that day or any other. Clearly defendant Boram's actions do not rise to the level of a constitutional

violation.

### 3. **Defendant Mace**

In the complaint, the plaintiff asserts that he was seen by Dr. Mace for a follow-up examination after his fall outside the dining hall. At the time, the plaintiff reported dizziness, blurred vision and headaches. Dr. Mace suggested that the plaintiff's symptoms could be a result of his Polymyositis, instead of a result of his fall. In addition, Dr. Mace denied the plaintiff's request for an MRI and an arthroscopic consult.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of

11

deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

In the instant case, the plaintiff has failed to show that the conduct of Dr. Mace rose to the level of a constitutional violation. It would not be unreasonable for Dr. Mace to explore the plaintiff's medical history in determining the cause of his symptoms. Moreover, Dr. Mace is not obligated to provide the plaintiff with any and all tests that the plaintiff wishes to have. Therefore, at best, the plaintiff asserts nothing more than a difference of opinion between himself and Dr. Mace

as to the best course of his treatment. As noted above, this is insufficient to show the violation of a constitutional right.

### 4. Defendant Plasay

With regard to defendant Plasay, the plaintiff asserts that upon consulting Dr. Plasay for his professional opinion about a letter the plaintiff had written to outside counsel, Dr. Plasay stood up and "wiped his derriere" with the letter stating this is what they will think of your letter. This alleged conduct, while inappropriate and unprofessional, simply does not violate the plaintiff's constitutional rights.

### 5. Defendants Veltri and Rich

With regard to these defendants, the plaintiff asserts that defendants Veltri and Rich were the members of his unit team which reviewed him for financial responsibility payments. In addition, defendant Rich suggested that the plaintiff apply to Prison Industries for employment. The plaintiff does not assert that either of these defendants acted in any inappropriate way or that their actions violated his constitutional rights. Therefore, the plaintiff has failed to state a claim against these defendants and they should be dismissed from this action.

## D. Plaintiffs' Claims Under the ADA

In this claim, the plaintiff asserts that defendant Conrad discriminated against him because of his medical conditions, thereby violating the plaintiff's rights under the ADA. In support of this claim, the plaintiff asserts that defendant Conrad fired him from his employment with UNICOR after finding out that the plaintiff had ceratin physical limitations from his medical conditions.

The ADA, as it applies to public entities, is codified at 42 U.S.C. § 12131, et seq. Further,

it has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional facilities. See PA Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998). However, absent an explicit waiver of sovereign immunity, the United States is generally immune from suit. United States v. Mitchell, 445 U.S. 535, 538 (1980). This "immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475 (1994), and extends to government agencies and employees. Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996). The ADA does not contain a waiver of sovereign immunity, and thus, does not apply to the federal government. Crowder v. True, 845 F.Supp. 1250 (N.D.Ill. 1994). Accordingly, the plaintiff cannot maintain his claim against defendant Conrad under the ADA and this claim should be dismissed.

## IV. Recommendation

Pursuant to 28 U.S.C.§§ 1915(e) and 1915A, and for the foregoing reasons, the undersigned makes the following recommendations:

(1) the plaintiff's claims under 42 U.S.C. § 1983 be **DISMISSED with prejudice**;

(2) the plaintiff's tort claim be **DISMISSED without prejudice**;

(3) the plaintiff's claims against defendants Francis, White, Lappin, Laird and Gonzales be **DISMISSED with prejudice**;

(4) the plaintiff's claims against defendants Mace and Plasay be **DISMISSED with prejudice**;

(5) the plaintiff's claims against defendants Boram, Dib, Nolte, Cuttwright, Veltri and Rich be **DISMISSED without prejudice**;

(6) the plaintiff's claim against defendant Conrad pursuant to the ADA and **DISMISSED**

14

**with prejudice**; and

(7) this case be **CLOSED** and **STRICKEN** from the Court's active docket.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: November 15, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE